**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**DOCKET NO. 1:21-cv-135-MOC**

| | |
|---|---|
| **JAMES DRYE,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**KILOLO KIJAKAZI,** )<br>**Acting Commissioner of Social Security** )<br>)<br>Defendant. ) | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff James Drye's Motion for Summary Judgment (Doc. No. 13) and Defendant Commissioner's Motion for Summary Judgment (Doc. No. 17). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative review decision on his application for disability insurance benefits. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**, and this matter is **REVERSED** and **REMANDED** for further proceedings consistent with this order.

### I.   Background

Plaintiff applied for Title II Disability Insurance Benefits ("DIB") on December 3, 2019, claiming disability due to bilateral ulnar nerve entrapment, status post surgeries with ongoing neuropathy, lumbar degenerative disc disease ("DDD"), degenerative joint disease ("DJD") of the knees and ankles, gout, obesity, depression, and post-traumatic stress disorder ("PTSD"), alleging an onset date of November 1, 2019. (Tr. 89, 188; Doc. No. 14 at 1). Plaintiff's claim was initially denied on March 10, 2020, and denied upon reconsideration on May 25, 2020. (Tr. 125). Plaintiff then had a telephone hearing before Administrative Law Judge ("ALJ") Ann Paschall on October

1

19, 2020. (Tr. 37). ALJ Paschall denied Plaintiff's claim for benefits on November 23, 2020. (Tr. 7). Plaintiff requested an appeal to the Social Security Appeals Council ("AC"), but this request was denied on March 11, 2021. (Tr. 1).

Plaintiff then filed a complaint with this Court challenging the Social Security decision in his case on May 12, 2021. (Doc. No. 1). Plaintiff moved for summary judgment on this claim on December 7, 2021. (Doc. Nos. 13, 14). Defendant moved for summary judgment on March 7, 2022. (Doc. Nos. 17, 18). Plaintiff responded on March 18, 2022. (Doc. No. 19). The matter has been fully briefed and is ripe for disposition by this Court.

## II. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.

> If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### III. Substantial Evidence

#### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence.

#### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

   a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

3

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's RFC precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)–(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

In rendering his decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003). At Step One, the ALJ found that Plaintiff had not engaged in gainful activity since November 1, 2019, the alleged onset of Plaintiff's disability. (Tr. 12). At Step Two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease, degenerative joint disease of the knees and ankles, gout, right ulnar nerve

4

neuropathy/ulnar nerve entrapment, obesity, depression, and post-traumatic stress disorder, and that these impairments significantly limit the ability to perform basic work activities. (Id.). At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Id.); see 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. The ALJ then determined Plaintiff's RFC, finding that Plaintiff can perform "light work" with certain limitations. (Tr. 15–20). At Step Four, the ALJ determined that Plaintiff cannot perform any past relevant work as a CNA or stock clerk. (Tr. 20); see 20 C.F.R. § 404.1565. At Step Five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including jobs such as "sorter," "weigher," and "folder." (Tr. 21–22); see 20 C.F.R. § 404.1569. Accordingly, the ALJ concluded that Plaintiff is not disabled for purposes of the Social Security Act. (Tr. 22).

## IV. Discussion

Plaintiff appeals this decision, arguing that the ALJ erred by failing to evaluate the medical opinion of Nurse Practitioner ("NP") Karen Welch, (Doc. No. 14 at 5–7), failing to perform a function-by-function assessment of Plaintiff's ability to use his hands, (id. at 7–12), failing to evaluate and assign substantial weight to the Department of Veterans' Affairs ("VA") disability rating, (id. at 12–16), and failing to address the "material inconsistencies" between opinions of psychological experts and the RFC assessment, (id. at 16–18). Plaintiff also argues that he is entitled to a rehearing because the structure of the Social Security Administration is not constitutionally valid. (Id. at 18–25).

The Court agrees that it appears that the ALJ did not adequately consider NP Welch's opinion. Under applicable Social Security regulations (issued in 2017), the ALJ "will not provide

any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504; see also Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017) (hereinafter "2017 Social Security Regulations"). However, under the regulations the ALJ "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim." Id. In this case, the Court finds that the ALJ failed to consider key supporting evidence underlying the VA's disability rating, specifically the opinion of Nurse Practitioner ("NP") Welch. While it is not clear that this evidence should produce a different outcome in this case given that significant time has elapsed since NP Welch rendered her opinion, the severity of disability documented by NP Welch was so great that it at least merited consideration by the ALJ and discussion to why it was or was not persuasive.

The Court rejects Plaintiff's other arguments. The ALJ was not required to evaluate the VA's disability rating of Plaintiff and, in fact, was directed not to do so by applicable regulations, as discussed above. The Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's ability to use his upper right extremity and the ALJ's determination of Plaintiff's RFC. Again, the Court's review in this case is somewhat limited and the threshold the Commissioner must clear to show "substantial evidence" is low.

With respect to Plaintiff's constitutional argument, this Court affirms its many prior holdings that Plaintiff does not have standing to litigate the constitutionality of the Social Security Administration's structure unless he can show that the structure in some way affected him, which Plaintiff cannot do here. The Court joins numerous other courts throughout the nation in so ruling.

### a. NP Welch's Evaluation

NP Welch performed a compensation and pension ("C&P") examination on Plaintiff on October 11, 2016 to assist in determining the appropriate VA disability rating for Plaintiff. (Doc. No. 14 at 5). NP Welch noted that after his RUE surgery with ulnar transposition, Plaintiff had developed numbness in his right elbow to almost halfway down the right posterior arm. (Id.). Plaintiff continued to have numbness in his right fourth and fifth digits and had a significant loss of strength in his right hand. (Id. at 5–6). Plaintiff took Vicodin for the neuropathy and was discharged from physical therapy ("PT") a couple weeks prior. (Id. at 6). Plaintiff experienced intermittent shooting pains throughout the day in his RUE. (Id.). He displayed painful and limited range of motion ("ROM") on physical examination ("PE") and he only had 3/5 strength in his right elbow with flexion and extension; he also had a degree of ankylosis in his right elbow with ongoing numbness in his right fourth and fifth digits. (Id., citing Tr. 1766–69). NP Welch concluded that Plaintiff was "unable to lift more than 5-10 lbs. due to weakness right arm. He could perform duties not requiring use of RUE." (Id., citing Tr. 1770). NP Welch also examined Plaintiff's lumbar spine and concluded that Plaintiff was "unable to stand more than 15-20 minutes, walk more than 100 yards, lift more than 25 lbs. without significant pain." (Id., citing Tr. 1765).

As discussed, the 2017 Social Security Regulations direct ALJs to assign no weight to disability ratings issued by other agencies such as the VA and to refrain from even discussing such ratings in their analysis. 20 C.F.R. § 404.1504. However, the regulations nonetheless require the ALJ to "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim." Id. In this case, the ALJ did not even mention NP Welch's assessment of Plaintiff in her opinion, much less explain why she did or did not find it relevant to Plaintiff's claim for disability benefits. To be fair, as the

Government argues, NP Welch assessed Plaintiff more than three years prior to the alleged onset of his disability. (Doc. No. 18 at 13). And, as the Government notes, this Court has previously found "no issue" with an ALJ decision that failed to discuss evidence that "significantly" predated the relevant period. (Id., citing Early v. Berryhill, 3:17-cv-437-MOC-DLH, 2018 WL 3242690 at *2 (W.D.N.C. July 3, 2018)). However, Early involved an ALJ's failure to consider an x-ray from 2007, which arguably showed disability (compared with a 2004 medical exam which showed no issues). Early, 2018 WL 3242690, at *1.

The facts in this case are markedly different than Early. In Early, the ALJ appears to have omitted reference to an x-ray taken a decade prior to the proceedings, which arguably showed signs of disability. In this case, the ALJ omitted reference to a full-fledged medical examination, taken a mere three years prior to the alleged onset of disability, which unambiguously concluded that Plaintiff was severely disabled at that time. This case involves evidence that is more recent, more comprehensive, and more severe than the evidence in Early. Therefore, while the Early ALJ was justified in omitting reference to the x-ray, this case is distinguishable from Early.

The Court finds that NP Welch's assessment was sufficiently recent, comprehensive, and documented such severe symptoms of disability that the ALJ should have at least <u>considered</u> it and explained whether it was relevant. In so ruling, the Court does <u>not</u> find that NP Welch's evaluation was relevant. It is entirely conceivable that, for example, Plaintiff's symptoms have abated since NP Welch evaluated him or that NP Welch's assessment was not credible to the ALJ once weighed against other evidence. However, it also conceivable that NP Welch credibly documented medical conditions which persist and would entitle Plaintiff to Social Security disability benefits. Because the ALJ did not even mention NP Welch's assessment, the Court's judicial review of the ALJ's analysis is impaired because the Court cannot determine if "substantial evidence" supports the

ALJ's decision to, evidently, not assign any weight to NP Welch's evaluation. Therefore, remand is proper on this issue for the ALJ to consider NP Welch's evaluation and explain whether it impacts Plaintiff's claim for benefits.

### b. The VA Disability Rating

Plaintiff argues that "[t]he ALJ erred by failing to evaluate and assign substantial weight to the VA disability rating." (Doc. No. 14 at 12–16). Plaintiff argues that preexisting caselaw from the Fourth Circuit requiring ALJs to consider VA disability ratings remain in force despite the 2017 Social Security Regulations. (Id. at 22, citing Rose v. Saul, No. 7:19-cv-91-BO, 2020 WL 4740779, *2–3 (E.D.N.C. Aug. 14, 2020)). The Court disagrees. The 2017 Social Security Regulations, by their explicit text, preclude ALJ's from considering VA disability ratings. 20 C.F.R. § 404.1504 ("We will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits.").

The regulations appear to have been validly promulgated by the Social Security Administration. Regulations implementing a statute which were validly issued by an agency charged with implementing that statute supersede prior judicial constructions of that statute unless those judicial constructions follow from the unambiguous terms of the statute. See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982 (2005). As the Government persuasively argues, that is not the case here. (Doc. No. 18 at 20–23). Therefore, as this Court explained in Rogers, "the revised regulations supersede judicial precedent and ALJs are not required to provide persuasive, specific, and valid reasons for discounting VA disability ratings." Rogers v. Comm'r of Soc. Sec., No. 3:20-cv-206-RJC-DSC, 2022 WL 135310, at *4 (W.D.N.C.

9

Jan. 13, 2022)). Of course, as discussed above, ALJs must still discuss the <u>evidence</u> underlying those ratings because the revised regulations direct them to do so.

Plaintiff relies heavily on <u>Rose v. Saul</u>, a case in which "two government agencies performing similar assessment reached polar opposite conclusions, leaving a glaring hole in the record and preventing judicial review." <u>Rose v. Saul</u>, No. 7: 19-cv-91-BO, 2020 WL 4740479 (E.D.N.C. Aug. 14, 2020). The <u>Rose</u> court "remedie[d] this problem" by applying previous Fourth Circuit precedent requiring ALJs to address the discrepancy between their rulings and VA disability rulings. The <u>Rose</u> court held that the 2017 Social Security Regulations did <u>not</u> overrule the previous Fourth Circuit precedent. Because this Court finds that the regulations <u>did</u> overrule the Fourth Circuit precedent, it cannot adopt the approach of the <u>Rose</u> court. However, this Court stresses that another remedy for this problem is provided by the regulations themselves: specifically, the provision within the regulations directing ALJs to consider the evidence underlying the decisions of other government agencies. This provision should prevent agencies from reaching polar opposite conclusions—or at least, doing so without adequate explanation and reasoning. This provision also permits district courts to engage in judicial review of ALJ decisions by, when appropriate, considering if such ALJ decisions adequately took into consideration the evidence underlying decisions of other government agencies. Where the ALJ does not do so, the district court can remand the case to the ALJ on the strength of this provision (as the Court does here due to the ALJ's failure to consider the opinion of NP Welch).

In his response, Plaintiff argues that the 2017 Social Security Regulations were promulgated in an attempt to "shield itself from judicial review." (Doc. No. 19 at 4). As a result, Plaintiff argues that the 2017 Social Security Regulation were promulgated relying on factors Congress did not intend the Social Security Administration to consider and, thus, are "arbitrary

10

and capricious." For the reasons that follow, the Court rejects this late-breaking challenge to the validity of the 2017 Social Security Regulations. As in Rogers, the Court is not aware of any defects in the notice-and-comment rulemaking process which led to the issuance of the 2017 Social Security Regulation and finds that Plaintiff does not successfully raise any.

Plaintiff appears to be correct that the 2017 Social Security Regulations were motivated, in part, by a desire to prevent courts from "reweighing evidence instead of applying the substantial evidence standard of review." See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017). But, contrary to Plaintiff's insinuation, this is an entirely proper motivation for the Social Security Administration to issue this rulemaking.

The Social Security Administration is charged by statute to adjudicate claims for Social Security benefits and to implement the terms of the Social Security Act, including by issuing regulations. The Social Security Act provides for a limited review of Social Security adjudicative decisions by district courts. See 42 U.S.C. § 405(g). This limited review likely reflects the fact that, unlike ALJs, district courts do not take evidence, hear witness testimony, or otherwise directly conduct Social Security adjudications. Moreover, district courts lack the accumulated subject matter expertise in Social Security cases which Social Security ALJs are likely to have as a result of specializing in Social Security matters. Of course, Article III courts retain ultimate authority to "say what the law is" in cases properly before them. See Marbury v. Madison, 5 U.S. 137, 177–78 (1803). But in some cases, the law commits the resolution of certain factual issues to agency adjudicators. See Oil State Energy Services, LLC v. Greene's Energy Group, LLC, 138 S. Ct. 1365, 1372–73 (2018) (finding that Congress has "significant latitude to assign adjudication of public rights to entities other than Article III courts"); Executive Benefits Ins. Agency v. Arkison, 1344 S. Ct. 2165, 2171 (2014) (same); Commodities Futures Trading Com'n v. Schor, 478 U.S.

11

833, 847–58 (1986). In the case of Social Security adjudications, the district court's factual review is limited to application of the "substantial evidence" standard. 42 U.S.C. § 405(g).

Ultimately, Congress empowered the Social Security Administration to issue reasonable regulations governing how Social Security claims are adjudicated and defining, consistent with the requirements of the Social Security Act, the scope of district courts' review of ALJ's factual findings. These regulations must be issued through the proper administrative process and are themselves subject to judicial review. But provided they are properly issued and are reasonable interpretations of the Social Security Act, the regulations are valid even if they result in a narrower scope of district court review—as Plaintiff argues is the case here.

### c. The ALJ's Evaluation of Plaintiff's Upper Right Extremity

Plaintiff argues that the ALJ did not perform a function-by-function analysis that reflected the full degree of limitation in his right upper extremity. (Doc. No. 14 at 7–12). This argument ignores the plain language of the ALJ's decision. The ALJ conducted the proper analysis, cited and explained her RFC finding in detail, and included a discussion of the limitations on Plaintiff's upper right extremity. (Tr. 15–20). Therefore, substantial evidence supports the ALJ's decision.

RFC is an administrative assessment of the most an individual can do despite the limitations caused by all of their impairments. 20 C.F.R. § 404.1545(a); Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1–2 (July 2, 1996). In making the RFC assessment, the ALJ must consider all functional limitations resulting from the claimant's medically determinable impairments. SSR 96-8p, 1996 WL 374184, at *2. But, the ALJ need not mirror any particular piece of evidence, or even discuss every piece of evidence in the record. See Reid v. Comm'r of Soc. Sec'y, 769 F.3d 861, 865 (4th Cir. 2014). Rather, the ALJ must review and synthesize the record as a whole and make findings about what the evidence shows. See 20 C.F.R. § 404.1520b.

The ALJ conducted the appropriate analysis of all relevant functions at issue in this case. With regard to Plaintiff's right hand, the ALJ discussed a consultative examination report from Stephen Burgess, M.D., Ph.D., during which Plaintiff noted problems with his right arm, but acknowledged that he could still sweep, mop, do some laundry, vacuum, wash dishes, cook, dust make a bed, and do light cleaning. (Tr. 17, 1802, 1804–05). The ALJ also cited evidence that Plaintiff had normal strength in all extremities and an x-ray showing no abnormal findings in Plaintiff's right hand. (Tr. 16, 1421). Other evidence provides additional support. (See, e.g., Tr. 1432 (normal strength, reflexes, and sensation in all extremities), 1443 (same)).

This is not to say that Plaintiff's impairments did not cause a significant degree of limitation. To the contrary, the ALJ discussed and acknowledged evidence, including Plaintiff's statements, that was arguably inconsistent with the findings the ALJ eventually reached. (See, e.g., Tr. 15 (summarizing hearing testimony)). Together with the discussion referenced above, this satisfied the ALJ's obligation to evaluate the evidence in the record and resolve conflicts. Having done this, the ALJ restricted Plaintiff to light work—which involves lifting no more than 20 pounds—with numerous additional limitations, among them a restriction to frequent manipulation with both upper extremities.

Therefore, this Court rejects Plaintiff's claim, which essentially asks this Court to exceed the scope of its review by reweighing the evidence. See Biestek, 139 S. Ct. at 1154 (explaining that a district court's review of a Social Security disability matter "looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations"); Craig, 76 F.3d at 589 (assigning to the ALJ's the role of addressing conflicts when "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled") (internal citations and quotations omitted); Hays, 907 F.2d 1453, 1456 (4th Cir. 1990)

(stating that a reviewing court may not reweigh the evidence or substitute its own judgment, even if it appears to the court that the evidence weighs in favor of a different result); Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982) (requiring affirmance so long as substantial evidence supports the Commissioner's decision, even if the reviewing court disagrees with the Commissioner's weighing of the evidence). In light of the supporting discussion the ALJ provided in her decision, there is no merit to Plaintiff's claim that the ALJ did not supply the appropriate function-by-function analysis. Therefore, Plaintiff fails to clear the high bar of showing that the ALJ's decision lacked "substantial evidence" as to his upper right extremity.

### d. The Alleged "Material Inconsistencies" Regarding Plaintiff's Mental Health and his RFC

Plaintiff also argues that the ALJ did not account for inconsistency between his RFC finding and opinion evidence she found to be "fully persuasive." (Doc. No. 14 at 16–18; Tr. 18). There is no merit to this claim because there was no inconsistency for the ALJ to resolve. Read in their entirety, the opinions at issue stated that Plaintiff could perform work involving simple routine repetitive tasks. (Tr. 67–69, 104–106). That is consistent with the ALJ's restrictions to "simple routine tasks" and "simple work related decisions." (Tr. 15).

By regulation, the Commissioner does not give any specific weight to any medical opinion. 20 C.F.R. § 404.1520c(a). Instead, the Commissioner evaluates medical opinions against multiple factors. 20 C.F.R. § 404.1520c(c). The factors of supportability and consistency are the most important in determining the persuasiveness of medical source's opinion, and the Commissioner is not required to explain the other three factors. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff has failed to identify any "material inconsistency" between the State agency opinions discussed in his brief and either the RFC or the vocational evidence in the record. (Doc. No. 14 at 16–18). He asserts that both sources stated he could only perform work involving simple

14

instructions. (Id. at 16). But this claim reads these opinions selectively, ignoring the conclusions those sources eventually reached. Those opinions also stated that Plaintiff had no limitation in his ability to process short instruction and that he had a moderate degree of limitation with detailed instructions. (Tr. 67, 104). Then, having evaluated all of Plaintiff's mental limitations, both sources eventually concluded that, despite his impairments, Plaintiff retained the mental capacity for work involving "SRRTs" (short routine repetitive tasks). (Tr. 69, 106).

That is entirely consistent with the ALJ's RFC finding for simple routine tasks and simple work-related decisions. (Tr. 15, 69, 106). It is also consistent with two of the three sample jobs the vocational expert ("VE") identified, both of which require reasoning level 2's "detailed but uninvolved" instructions. (Tr. 53–54). The Fourth Circuit has foreclosed any claim that someone like Plaintiff, who can perform simple routine tasks, cannot perform work at reasoning level 2. See Lawrence v. Saul, 941 F.3d 140, 141–144 (4th Cir. 2019). Accordingly, there was no inconsistency between these opinions and the ALJ's RFC finding. Therefore, this finding was supported by substantial evidence.

### e. Plaintiff's Constitutional Argument

Plaintiff argues that SSA's decision denying his disability benefits claim was constitutionally defective. He seeks a remand based on this constitutional argument. However, Plaintiff lacks standing to litigate this constitutional argument because he has not established compensable harm from the removal restrictions he challenges.[1] See Satterthwaite v. Kijakazi, No.

---

[1] This Court and many others have repeatedly rejected Social Security plaintiffs' claims that ALJ's decisions are constitutionally defective based on a separation of powers argument. Because this path has now been well-trodden, the Court need not go into detailed discussion for why this claim fails. See, e.g., Juliana Jolean A. v. Kijakazi, No. 5:20-cv-1268, 2022 WL 595361, at *1–5 (N.D.N.Y. Feb. 28, 2022); Jason V. v. Comm'r of Soc. Sec., No. C21-5527-SKV, 2022 WL 575703, at *5–7 (W.D. Wash. Feb. 25, 2022); Colbert v. Comm'r of Soc. Sec., No. 5:20-CV-2234, 2022 WL 556738, at *2 (N.D. Ohio Feb. 24, 2022); Kathy R. v. Kijakazi, No. 2:21-cv-00095-JDL,

3:20-cv-724-MOC, 2022 WL 468946 (W.D.N.C. Feb. 15, 2022); Helms v. Comm'r of Soc. Sec., No. 3:20-cv-598-MOC, 2021 WL 5710096 (W.D.N.C. Dec. 1, 2021). As the Supreme Court held in Collins v. Yellen, 141 S. Ct. 1761, 1787–89 (2021), even where an unconstitutional statutory removal restriction exists, a claimant seeking relief on that basis must show that the restrictions actually caused him harm. Plaintiff has not shown—and he cannot show—compensable harm from the any of the removal restrictions he cites, and therefore his request for a remand based on his constitutional claim is without merit.

## V.    Conclusion

Having thoroughly reviewed the ALJ's decision, the record, and the parties' motions and briefs, the Court enters the following Order.

---

2022 WL 42916, at *3–5 (D. Me. Jan. 5, 2022), report and recommendation adopted by 2022 WL 558359 (D. Me. Feb. 24, 2022); Kreibich v. Kijakazi, No. 20-cv-1045-bbc, 2022 WL 538261, at *6 (W.D. Wis. Feb. 23, 2022); Taffe v. Kijakazi, No. 20-CV-1974-WVG, 2022 WL 542884, at *9–11 (S.D. Cal. Feb. 22, 2022); Kowalski v. Kijakazi, No. 3:20-CV-01783, 2022 WL 526094, at *9–12 (M.D. Pa. Feb. 22, 2022); Twila D.B. v. Kijakazi, No. 2:20-cv-6304-AFM, 2022 WL 425936, at *2–4 (C.D. Cal. Feb. 10, 2022); Pepper v. Kijakazi, No. 6:20-cv-4159, 2022 WL 391577, at *2–3 (D.S.C. Feb. 9, 2022); High v. Kijakazi, No. 203528, 2022 WL 394750, at *5–6 (E.D. Pa. Feb. 9, 2022); Rhonda W. v. Comm'r of Soc. Sec., No. 2:20-cv-5931, 2022 WL 390802, at *6–8 (S.D. Ohio Feb. 9, 2022); Vickery v. Comm'r of Soc. Sec., No 5:21-cv-122-PRL, 2022 WL 252464 (M.D. Fla. Jan. 27, 2022); Carla D. v. Kijakazi, No. 2:20-cv-361-LRS, 2022 WL 264460, at *1–3 (E.D. Wash. Jan. 27, 2022); Ramos v. Comm'r of Soc. Sec., No 1:20-cv-01606-EPG, 2022 WL 105108, at *2–4 (E.D. Cal. Jan. 11, 2022); Nudelman v. Comm'r of Soc. Sec., No. CV-20-08301-PCT-MTL, 2022 WL 101213, at *10–13 (D. Ariz. Jan 11, 2022); Mor v. Kijakazi, No. 21-1730, 2022 WL 73510, at *3–5 (D.N.J. Jan. 7, 2022); Hutchens v. Kijakazi, No. 1:20CV1124, 2021 WL 5834409, at *6–14 (M.D.N.C. Dec. 9, 2021), report and recommendation adopted by ECF No. 24 (M.D.N.C. Jan. 5, 2022); Olimpiada v. Kijakazi, No. 2:21-cv-00196-CLB, 2022 WL 19678, at *4–5 (D. Nev. Jan. 3, 2022); Benavidez v. Kijakazi, No. 20-990, 2021 WL 6062715, at *4 (D.N.M. Dec. 22, 2021); Wybo v. Kijakazi, No. 20-518, 2021 WL 6052423, at *4 (W.D. Ky. Dec. 21, 2022); Nathaniel H. v. Kijakazi, No. 6:19-cv-01280-AA, 2021 WL 5921377, at *4–6 (D. Or. Dec. 15, 2021); Clark v. Kijakazi, No. 20-cv-1363, 2021 WL 5905942, at *3–4 (E.D. Wis. Dec. 14, 2021); Alice T. v. Kijakazi, No. 8:21CV14, 2021 WL 5302141, at *18–19 (D. Neb. Nov. 15, 2021); Robinson v. Kijakazi, No. 1:20-cv-00358, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021). Furthermore, the Court is not aware of any case holding to the contrary, and Plaintiff does not cite any such case.

**ORDER**

**IT IS, THEREFORE, ORDERED** that for the reasons set forth above, Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**, and this matter is **REVERSED** and **REMANDED** to the Commissioner to take appropriate action to provide a full evaluation of Plaintiff's claim to benefits, especially consideration of NP Welch's opinion and discussion of whether it was relevant or not and why.

Signed: May 6, 2022

Max O. Cogburn Jr
United States District Judge